Barney v. Spangler.

---

BARNEY, Respondent, v. SPANGLER, Appellant.

St. Louis Court of Appeals, April 14, 1908.

1. MASTER AND SERVANT: Wrongful Discharge: "Without Just Cause." In an action for wrongful discharge brought by an employee, it was sufficient for the plaintiff to show his contract for a definite time and that he was discharged before the expiration of that time; where the answer did not allege that he was discharged for cause, it was not necessary to submit to the jury the question as to whether he was discharged without cause.

2. ——: ——: Mitigating Damage. It is the duty of an employee wrongfully discharged to mitigate the damages caused by such discharge by seeking employment, but it is not necessary for him to seek employment to which he was unaccus-

tomed. In an action for wrongful discharge, where it was shown the plaintiff was offered employment with which he was unfamiliar, whether it was his duty to accept it was a question for the jury.

3. ——: **Sunday Work: Criminal Statute.** A person can not recover for labor done for another in violation of the criminal statute. Work done by an employee for his employer on Sunday, the same not being work of necessity, was in violation of the Sunday law and he could not recover for such service.

4. **PRACTICE: Trials: Remarks of Court.** Remarks of court made in the progress of an argument to the jury in line with the instructions which the court had given are not prejudicial.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED *si.*

*Faris & Oliver* for appellant.

(1) The first issue of fact which the jury was called upon to determine was whether the plaintiff had a contract for one year and if so was he then wrongfully discharged? Not whether he had a year's contract and was merely discharged. Fink v. Phelps, 30 Mo. App. 431; Wyatt v. Railroad, 62 Mo. 408; Chipley v. Leathe, 60 Mo. App. 15; Jackson v. Boyles, 67 Mo. 609; Crews v. Lockland, 67 Mo. 619. (2) If plaintiff had any contract to work on Sunday, such work was in violation of section 2240, Revised Statutes 1899, and he can not in a suit for a wrongful discharge recover this amount as part of his damages, nor can he recover, in any other kind of suit. Haggerty v. Storage Co., 143 Mo. 247; Summers v. Summers, 54 Mo. 340; State v. Stuckey, 98 Mo. App. 664; Board of Trade v. Brady, 78 Mo. App. 592. (3) It was clearly the duty of the jury to deduct such probable earnings even if they believed the plaintiff's theory of a whole year's contract. Estes v. Shoe Co., 155 Mo. 577; Koenigkraemer v. Glass Co., 24 Mo. App. 124; Lolly v. Cantwell, 40 Mo. App. 44.

*Ward & Collins* for respondent.

(1)   All respondent must show to make a prima-
facie case is that he was employed for one year and that
appellant discharged him.   Then the burden of proof to
show he was rightfully discharged was upon the appel-
lant.   Miller v. Boot & Shoe Co., 26 Mo. App. 62; Steph-
ens v. Crane, 37 Mo. App. 492.   (2) The testimony of E.
C. Randolph to the effect that he offered respondent
three dollars a day for working as a carpenter, cannot go
to cut down the amount of damages to which we are en-
titled, because it was not a similar employment, and he
was not compelled to accept different kind of employ-
ment though offered the same price.   Vogel v. West
Plains, 73 Mo. 588; Boland v. Quarry Co., 127 Mo. 522;
Howard v. Shoe Co., 82 Mo. App. 405.   (3)   The con-
tract price is prima facie, the measure of damages and
the burden of showing a mitigation of such damages is
on the defendant.   Pond v. Wyman, 15 Mo. 183; Tenzer
v. Gilmore, 114 Mo. App. 215.

BLAND, P. J.—The suit is to recover damages
caused by the wrongful discharge of plaintiff as foreman
of defendant's stave and sawmill, located at Caruthers-
ville, Missouri.   Defendant resides in the State of Ohio.
In 1904 and 1905, Ezra Blanchard was general super-
intendent of the mill.   Plaintiff, in 1904, resided at
Sikeston, Missouri.   Plaintiff's evidence   shows   that
Blanchard knew plaintiff to be an experienced mill
foreman and in December, 1904, employed him for a year
as foreman of defendant's mill, agreeing to pay him
three dollars per day for his services, to furnish him
free house rent, fuel and lights and also to pay him
four dollars per day at the end of the year, if the mill
should make ten thousand dollars.   Plaintiff entered
the service of defendant, as foreman of the mill, under
this contract, on December 5, 1904, and continued to
serve defendant until May 6, 1905, when he was wrong-

fully discharged. Defendant offered some countervailing evidence with respect to the term of employment, and also to the effect that plaintiff was not discharged but quit work of his own accord, but it was of slight weight. The jury found the issues for plaintiff and assessed his damages at $479. Defendant appealed.

The petition alleged that plaintiff was damaged in the sum of $560, in expense incurred in moving from Sikeston to Caruthersville and in loss of wages caused by his wrongful discharge, and in the sum of $142, caused by defendant's refusal to furnish him free house rent, fuel and lights from May sixth to December 5, 1905; also that plaintiff worked eleven Sundays for which he has not been paid, during the time he was employed; to his damage in the sum of $33. These allegations of damages were put at issue by the answer.

1. Defendant assigns as error the giving of the following instruction for plaintiff, to-wit:

"The court instructs the jury that if you find and believe from the evidence in this case that the plaintiff was employed by the defendant in the capacity as foreman of the defendant's saw mill and stave mill at Caruthersville, Missouri, for a period of one year from and after December 5, 1904, to December 5, 1905, at a salary of three dollars ($3) a day to be paid plaintiff by the defendant, and that defendant was to furnish to plaintiff a dwelling house free of rent, together with fuel and lights during the time of the contract, and that plaintiff entered upon the discharge of his duties under such contract; and that during the year of the contract of such employment and prior to December 5, 1905, the defendant or his agent discharged the plaintiff or failed to furnish to said plaintiff a dwelling house free of rent together with fuel and lights, then your verdict must be for the plaintiff in whatever sum you may find he has been damaged by reason of the failure of defendant to

perform his part of such contract, not to exceed in all eight hundred and thirty-five dollars."

The contention is that the petition alleges plaintiff was discharged "without any cause, justification or excuse," and that it should have been left to the jury to find whether or not he was discharged "without any cause, justification or excuse." The answer denied the employment was for a year and denied that defendant was discharged; on the contrary it alleged the employment was by the day and that plaintiff quit of his own accord. Therefore there was no contention that plaintiff was discharged for cause. If the contract of employment was for a year, plaintiff's discharge before the expiration of that time was a breach of the contract and a civil wrong, and as there was neither allegation nor proof that the discharge was for cause, there was no occasion for the court to leave it to the jury to find whether or not the discharge, if made, was without cause, that is, to find a fact which, in the absence of evidence to the contrary, the law presumes to be true.

2.    Plaintiff testified he had been employed about one month after his discharge and had earned $100; that he had sought similar employment but had not been able to find it and was out of employment at the time of the trial. E. C. Randolph, superintendent of the International Harvester Company, testified that the company was engaged in building dredge boats and, in May or June, plaintiff worked five or six days for him at $2.50 per day; that Fisher, his boss carpenter, struck for higher wages and he offered plaintiff Fisher's place at $3 per day and plaintiff "at first agreed to take it but afterwards backed out." Plaintiff testified that in June, 1905, he worked five days for Randolph on a dredge boat, and Randolph offered him $3 per day if he would accept the position of foreman of a gang of carpenters working on the boat, but that he was not a carpenter, knew nothing about building boats, and for that reason did not ac-

cept the offer. On Randolph's evidence, defendant contends that plaintiff could have materially diminished his damages by accepting the employment offered by Randolph, and hence the verdict is excessive. Plaintiff was not bound to mitigate the damages by accepting employment to which he was not accustomed and which he was not competent to perform for want of experience. It was his duty to seek such employment as he had theretofore followed and was capable of performing, but he was under no obligation to accept anything that was offered (Tenzer v. Gilmore, 114 Mo. App. l. c. 215, 89 S. W. 341. Plaintiff's evidence tends to show he sought employment similar to that in which he was accustomed to work and that he refused Randolph's offer for the reason he was unfamiliar with the employment Randolph offered him. On this evidence, we do not think that plaintiff, as a matter of law, was bound to accept the employment offered by Randolph, to mitigate the damages.

3. The point is made that plaintiff is not entitled to recover for the eleven days work done on Sundays, for the reason said work was done in violation of the statute prohibiting labor on the Sabbath, other than work of necessity. The evidence does not show that plaintiff was required by the superintendent to do this work; it was not in his contract that he should work on Sundays. So far as the evidence shows, the Sunday work was done of his own volition. He made out the payroll for the time of the men under him and for his own. His Sunday work was not included in his time as turned in by himself, therefore, we think he did not intend to charge for such work and that the charge is an afterthought. Besides, it was not a work of necessity and was in violation of the Sunday law, and a misdemeanor under the statute (R. S. 1899, sec. 2240). A person cannot recover for labor done for another in violation of a criminal statute. [Haggerty v. Ice Mfg. & Storage Co., 143

Mo. 238; 44 S. W. 1114; Sedalia Board of Trade v. Brady, 78 Mo. App. 585.] We think plaintiff should not have been permitted to recover for his Sunday work.

4.   In his address to the jury, counsel for plaintiff, discussing an instruction for plaintiff, said: "The instruction means he can get $3 a day up to December 5, 1905." Defendant's counsel objected to this interpretation of the instruction. The court, addressing defendant's counsel, said: "If he can show the contract was broken without his fault he is entitled to all the time." This remark of the court, made in the presence of the jury, is assigned as error. The court instructed on the measure of damages, that if the jury found for plaintiff, they should "allow the plaintiff the full amount he would have received under his contract (as salary) from the time he was discharged up till the day of the expiration of the contract, less whatever amount you find from the evidence he could have made during such time in same or similar kinds of employment," etc. The remark of the court is in line with the instruction and we cannot see that defendant was prejudiced thereby.

For error in permitting a recovery of $33 for Sunday work, the judgment will be reversed and the cause remanded, unless within ten days from this date plaintiff remit $33 of his judgment; if the remittitur is made within the time allowed, the judgment for the balance will stand affirmed. All concur.